15177

STRAWHORN v. STANDARD MUTUAL LIFE ASS'N
(Two Cases)

(12 S. E. (2d), 4)

March, 1940.

*Mr. Edwin H. Cooper,* for appellant,

*Mr. Ralph J. Syfan,* for respondents,

December 5, 1940.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

These actions were brought in a Magistrate's Court in Abbeville County, and resulted in a verdict for the plaintiff in each case in the sum of $99.50 for actual and punitive damages. The facts and issues are identical in·each case, and by consent the two cases were tried together before the same jury. Upon appeal the Circuit Court affirmed the judgments, and appeal is now taken therefrom to this Court.

On February 10, 1938, the defendant, Standard Mutual Life Association, issued and delivered to Joseph M. Straw-

horn a policy insuring his life in the amount of $1,000.00. On the same day it issued and delivered to Bertha S. Strawhorn, the wife of Joseph M. Strawhorn, a policy insuring her life in the same amount. Under the terms of these policies the policyholders agreed to pay a premium of $1.50 and $1.75 per month, respectively, payable on the first day of each month. It is undisputed that although the premiums were payable on the first day of each month the policyholders were allowed a thirty-day grace period, during which time the company accepted such premiums as being paid on time.

In the interest of simplification, we will confine our discussion to the case of Joseph M. Strawhorn, the decision in which will be controlling in the other case.

At the time of the delivery of the policy to Strawhorn on February 10, 1938, he made an initial payment to the defendant of $7.50, and received therefor an official receipt. According to the plaintiff he was told by the agent that this cash payment paid not only the premium to May 1, 1938, but also included an initiation fee provided for by the policy, the amount of which was not specified. On April 28, 1938, or May 1, 1938, the plaintiff, who lived in Abbeville, mailed his check for $1.50 to the Columbia office of the defendant as payment of the premium due by him on May 1, 1938. Thereafter he remitted nine monthly premium payments, which, in conformity with his contention, by utilizing the grace period allowed, kept his policy in force up to April 1, 1939. A day or two prior to March 6, 1939, the plaintiff remitted to the defendant his usual monthly premium, which paid the premium due on his policy as of April 1, 1939. He included in the remittance, as was his custom, the sum of $1.75, representing the monthly premium due on Mrs. Strawhorn's policy through April 1, 1939. None of these payments are denied by the defendant.

Thereafter, on March 6, 1939, Mr. Strawhorn received the following letter from the defendant:

"Mr. Joseph M. Strawhorn,

"Abbeville, S. C.

"Dear Mr. Strawhorn:

"In 1937, the legislature passed a law requiring us to discontinue the issuance of certificates of membership like the one you now hold, therefore it will be impossible for us to reinstate your certificate of membership as same would be a violation of the law. However, if you are in good health, we will be glad to issue you one of our new policies which contains all of the desirable features of your old policy and in addition has loan paid·up and extended insurance values. After the third year, the dividends are calculated to reduce your premiums to about the same as your old rate. We inclose herewith application for your signature.

"Your monthly premium for the first.,three years will be $2.57 per month. To put your policy in force, you may return the inclosed application signed with your remittance of $2.57 and if your application meets with the approval of the association, policy will be issued on same immediately.

"P. S. Your policy is lapsed, therefore we are inclosing check in the amount of $3.25."

Mrs. Strawhorn received a similar letter from the company, the only difference being the number of the policy and the amount of money required.

Upon receipt of the foregoing letter, Mr. Strawhorn went to the office of the defendant in Columbia and demanded the return of all premiums paid by him on his policy and on that of his wife. The defendant refused to refund the premiums, and has never refunded them. Thereafter, on April 10, 1939, in a letter addressed to Mr. Strawhorn, the defendant changed its position, and claimed that it was within its legal rights under the law in issuing the two policies to Mr. and Mrs. Strawhorn, and said: "If you care to continue same, you and your wife may complete the inclosed certificates and return with the sum of $4.00 each which is

the reinstatement fee provided for under paragraph No. 5 headed 'Lapses and Re-instatements.' "

Paragraph 5 of the policy, to which reference is made, provides that it may be reinstated upon lapsation "by furnishing the association evidence of good health, satisfactory to the association, and upon payment of the sum of $4.00, which said application for reinstatement may be rejected for any reason the association deems sufficient."

The plaintiff, on April 29, 1930, again demanded a refund of all premiums, and this demand being refused these actions were instituted on August 4, 1939.

The complaints in the Magistrate's Court, which were in writing, charged in each case that the defendant willfully, wantonly and fraudulently cancelled the plaintiff's policy while it was still in.force, with the premiums fully paid up; that the defendant conceived and put into operation a fraudulent design to bring about the lapse of the policy by refusing to accept premiums thereon, in order to compel the plaintiffs to take out new policies at a higher premium rate, and to furnish evidence of good health; that the defendant knew at the time the policies were issued that they were in violation of law, knew that it had not met the requirements of the law; and denied the plaintiffs the right to continue their policies while undertaking to force them to take out new policies, upon the ground that a continuance of their policies was prohibited by law, and that the policies were prohibited at the time they were issued. All of these acts were charged in the complaint as having been done willfully and fraudulently.

In each case the defendant pleaded a general denial.

The appellant contends, among other things, that it was entitled to a directed verdict in the Magistrate's Court, in that it appeared that there was no evidence tending to show that the premiums paid on the policies were sufficient to keep them in force to April 1, 1939. Another contention made is that the premiums were not paid when

due. The Circuit Judge held to the contrary, and we fully concur in his conclusion that there was ample evidence upon which to submit these issues to the jury.

Complaint is made that the Circuit Court erred in holding that appellant was not authorized to charge an initiation fee for issuing the policies. This finding is immaterial, because, irrespective of whether the appellant had this right or not, the evidence tends to show that the initial cash payment of $7.50 in each case paid not only the premium up to May 1, 1938, but also included the Commissioner Approved Bond or Securities in an Amount of the initiation fee, nor did any witness for the defendant ever clarify the situation as to what this initiation fee was for or the amount of it.

Nor do we think the Circuit Court erred in upholding the action of the magistrate in submitting the question of punitive damages to the jury, and in refusing to charge the jury that the appellant was not required by law to deposit with the State Insurance Commissioner an approved bond or securities in the amount of $10,000.

The Act of the General Assembly, No. 150 (Acts of 1937, 40 St. at Large, page 191), approved April 8, 1937, is entitled, "An Act to Require Mutual Protective Associations, Mutual Aid Associations, Benevolent Associations, other Societies or Associations Operating on the Assessment Plan or Organized after the Passage of This Act and Insuring Its Members Against Loss by Death or Disability by Accident or Disease to Deposit with the Insurance Commissioner Approved Bond or Securities in an Amount of Ten Thousand ($10,000.00) Dollars, and to Further Regulate the Organization and Operation of Companies, Societies or Associations Doing Business on the Assessment Plan," and provides, in Section 4: "By-laws part of contract or policy.—No association, society or corporation organized for the purpose of insuring its members shall issue any policy or contract of insurance specifying that the by-laws

of such society, association or corporation shall become a part of the contract or policy of insurance unless said by-laws are physically incorporated in the contract or policy of insurance * * *."

The policies in question were issued about a year after the passage of the above Act, and it was specifically provided in each policy: "This whole policy shall be subject to the By-Laws." The by-laws were not incorporated in the policies of insurance issued to the plaintiffs.

However, the foregoing Act carried no provision that policies issued in violation of the Act would be deemed invalid as between the parties. The defendant knew that it violated Section 4 of the Act when it issued the policies, but this violation did not affect their validity. It merely resulted in the elimination of the by-laws as a part of the contract.

Upon a consideration of all the evidence, and the reasonable inferences to be drawn therefrom, we think the issue of punitive damages was properly submitted to the jury.

Nor do we think that the Magistrate erred in refusing to charge the jury that the appellant was not required by law to post with the State Insurance Commissioner the bond or securities required by the Act. While this phase of the matter is more or less irrelevant to the issues, it was injected into the case by the defendant on the direct examination of its vice-president, who testified that the company had deposited or posted with the State Insurance Commissioner bond and reserves in the sum of $7,000.00. Thereafter counsel for both parties argued this issue to the jury, and no objection was made to such argument by appellant's counsel until after the conclusion of the arguments, when the requested instruction was submitted and refused. In our opinion substantial justice was administered in the Magistrate's Court, free from prejudicial error.

Judgment affirmed in each case.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES BAKER and STUKES and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE concur.